**IN UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No.: 25-20098-kl |
| Llewellyn Gerald Reed, II and | ) | |
| Dianne M. Canton-Reed, | ) | |
| | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

**DOGWOOD STATE BANK'S OBJECTION**
**TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN**

Dogwood State Bank ("Dogwood"), by and through its undersigned counsel, states as follows for its Objection (this "Objection") to Confirmation of the Chapter 13 Plan [Dkt. No. 9] (the "Plan") filed by the Debtors, Llewellyn Gerald Reed, II and Dianne M. Canton-Reed (collectively, the "Debtors"):

**INTRODUCTION**

1. As detailed in Dogwood's timely filed Proof of Claim [Claim No. 11-3] (the "Claim"),[1] Dogwood holds a secured claim in an amount of no less than $429,569.85. To date, the Debtors have not objected to Dogwood's Claim.

2. However, in their Plan, the Debtors only afford Dogwood an $87,771 secured claim, despite the fact that they have provided no evidence supporting this significantly reduced amount. Moreover, the Debtors propose an impermissible treatment of Dogwood's secured claim based upon a mixed use of Bankruptcy Code Sections 1325(a)(5)(B) and 1325(a)(5)(C).

3. As a result, and for the reasons further detailed herein, the Debtors' Plan cannot be confirmed.

---

[1] All capitalized terms used and not otherwise defined herein shall have the same meanings assigned to them in Dogwood's Claim.

1

**RELEVANT BACKGROUND**

4.      Prior to the Petition Date (as defined herein), Dogwood made a loan to GMSE Enterprises, Inc. (the "Borrower") in the original principal amount of $534,000 (the "Loan").[2] *See* Claim at pg. 4 and Exhibit B.

5.      To induce Dogwood to make the Loan, the Debtors respectively executed and delivered the Llewellyn Guarantee and Dianne Guarantee (collectively, the "Guarantees") to Dogwood, pursuant to which the Debtors unconditionally guaranteed payment of all amounts due to Dogwood in connection with the Loan.  *See* Claim at pg. 4 and Exhibits A and C.

6.      As security for the obligations under the Note and Guarantees, the Debtors executed and delivered the Merrillville Mortgage and the Virgin Islands Mortgage to Dogwood, pursuant to which they granted Dogwood:  (i) a third priority security interest in the real property commonly known as 3738 W. 68th Ave., Merrillville, IN 46410 (the "Merrillville Property"); and (ii) a first priority security interest in the real property commonly known as 143 Morning Star, Queen Quarter, St. Croix, United States Virgin Islands 00820 (the "Virgin Islands Property," and together with the Merrillville Property, the "Collateral").  *See* Claim at pgs. 4-5 and Exhibits D and E.

7.      On January 21, 2025 (the "Petition Date"), the Debtors jointly filed a petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*).

8.      As of the Petition Date, the amount due and owing to Dogwood from the Debtors under the Loan Documents was no less than $447,087.16.

9.       Based upon the value of the Collateral and the outstanding balances of the senior liens against the same, Dogwood holds a secured claim in an amount of no less than $429,569.85 (the "Secured Claim") and an unsecured claim in an amount of $17,517.31. *See* Claim at pgs. 2-5.

---

[2] At all times relevant hereto, the Borrower was owned, operated and managed by the Debtors.

2

## **OBJECTION**

10.     Dogwood hereby objects to the Debtor's Plan on the following grounds:

**A.     The Plan violates the "one claim, one treatment" requirement of Bankruptcy Code Section 1325(a)(5).**

11.     While Bankruptcy Code Section 1325(a)(5) allows a debtor to choose from one of three distinct options for the treatment of a secured claim,  the "blended option" which the Debtors seek to apply to Dogwood's Secured Claim is not one of those three available options.   More specifically, Bankruptcy Code Section 1325(a)(5) provides, in relevant part, that a Chapter 13 plan cannot be confirmed over the objection of the holder of an allowed secured claim unless:

*(B)(i) the plan provides that…*

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property…; *or*

*(C) the debtor surrenders the property securing such claim to such holder.*

11 U.S.C. § 1325(a)(5) (*emphasis added*).

12.     It follows that while a debtor may treat a secured claim as contemplated in Bankruptcy Code Section 1325(a)(5)(B) *or* Section 1325(a)(5)(C), a debtor "may not select a different 11 U.S.C. § 1325(a)(5) option for different pieces of collateral securing the same claim." *In re Jenkins*, 639 B.R. 356, 363 (Bankr. E.D. Tex. 2022); *see also In re Barragan-Flores*, 984 F.3d 471, 475 (5th Cir. 2021) ("allowing a debtor to select a different § 1325(a)(5) option for each claim is different from allowing a debtor to select different options for different collateral securing

the same claim" and Section 1325(a)(5)'s "use of the conjunction 'or' between the options provided in subsection (A), (B), and (C) makes it clear that debtors may choose only one of those three options for each claim"); *In re Elkins*, No. 04-67961, 2005 WL 4030041, at *2-*3 (Bankr. S.D. Ohio Aug. 16, 2005) (Section 1325(a)(5) "sets forth mutually exclusive options for the treatment of secured claims, not alternatives that may be combined to form a composite remedy"); *In re Lemming,* 532 B.R. 398, 406 (Bankr. N.D. Ga. 2015) (the surrender option does not "provide a means for a debtor to pick and choose from non-exempt assets to retain, subject to lengthy contested valuation procedures").

13.     As stated in *In re Covington*, 176 B.R. 152, 155 (Bankr. E.D. Tenn. 1994):

> The debtor cannot have it both ways.  [The Creditor] is the holder of a single allowed secured claim.  If the debtor's plan is to be confirmed, she has two alternatives:  surrender [all collateral securing the Creditor's claim] in compliance with § 1325(a)(5)(C) or cram down [the Creditor's] secured claim in its entirety in the manner required by § 1325(a)(5)(B).  To hold otherwise, would be tantamount to a finding that a creditor in a Chapter 13 case who has a single claim may, at the whim of the debtor, be compelled to bifurcate the secured portion of its claim into as many individual claims as it has items of property securing its claim.

14.     Through their Plan, the Debtors seek to retain the Merrillville Property and surrender the Virgin Islands Property, but those properties both serve as collateral for Dogwood's sole Secured Claim.  Since this blended proposal violates the requirements of Bankruptcy Code Section 1325(a)(5), the Debtors' Plan cannot be confirmed.  *See*, *e.g.*, *Barragan-Flores*, 984 F.3d at 475-476 (affirming denial of confirmation based on blended use of Bankruptcy Code Sections 1325(a)(5)(B) and 1325(a)(5)(C)); *Elkins*, 2005 WL 4030041, at *3 (denying plan confirmation on the same grounds); *In re Covington*, 176 B.R. at 156 (same).[3]

---

[3] *See also* the *Objection to Chapter 13 Plan* filed by the United States of America in *In re.: Jeffrey Michael Kes Singer* (Bankr. S.D. Ind. Case No. 24-80199-JJG-13), wherein the United States objected to a debtor's Chapter 13 plan based upon the proposed dual use of Bankruptcy Code Sections 1325(a)(5)(B) and 1325(a)(5)(C) with respect to a single secured claim, and the corresponding August 22, 2024 Minute Entry sustaining said Objection, true and correct copies of which are attached hereto and incorporated herein as **Exhibit 1**.

VP/#70739891

**B.     The Plan does not satisfy the requirements of Bankruptcy Code Section 1325(a)(5)(B)(ii).**

15.     Where a debtor seeks to retain collateral over a secured creditor's objection, a debtor's plan must, *inter alia*, provide that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such [secured] claim is not less than the allowed amount of" that secured claim.  11 U.S.C. § 1325(a)(5)(B)(ii).

16.     For purposes of plan confirmation, the "allowed amount of the secured claim typically is the fair market value of the collateral which secures the claim as determined under the § 506(a) 'cramdown' provision."  *In re Duncan*, No. 08-8808AJM3, 2008 WL 5333561, at *1 (Bankr. S.D. Ind. Dec. 17, 2008); *see also In re Bell*, 304 B.R. 878, 880 (Bankr. N.D. Ind. 2003) (noting that fair market value is appropriate valuation for property which a debtor seeks to retain).

17.     Based upon the value of the Collateral and the amounts due and owing to the holders of the senior mortgages recorded against the Merrillville Property, Dogwood's Secured Claim is worth no less than $432,676.43:

|  | **Amount** | **Source** |
|---|---|---|
| Value of Merrillville Property: | $350,000 | *See* Claim at pg. 5; *see also* Paragraph 18 below. |
| Value of Virgin Islands Property: | $250,000 | *See* Claim at pg. 5; *see also* Paragraph 18 below. |
| Aggregate Amount Secured by First and Second Priority Mortgages recorded against the Merrillville Property: | ($167,323.57) | Claim Nos. 1-2 and 12-1. |
| **Amount of Secured Claim:** | **$432,676.43**[4] |  |

---

[4] At the time Dogwood filed its Claim, the holder of the first priority mortgage against the Merrillville Property (PNC Bank, National Association had yet to file its Proof of Claim.  The Debtors' scheduled amount of their debt to PNC was $160,605.00 (*see* Dkt. No. 1, pg. 21), but the amount set forth in PNC's Proof of Claim concerning such debt was only $157,498.42.  Based upon this $3,106.58 decrease in the amount due to PNC and secured by the Merrillville Property, the amount of Dogwood's Secured Claim has increased by $3,106.58 (from $429,569.85 to $432,676.43).

VP/#70739891

18.    The aforementioned Collateral valuations are based upon, *inter alia*, the following:

i)    A full appraisal of the Merrillville Property dated as of February 28, 2023, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit 2** (which assigns the Merrillville Property a fair market value of $350,000);

ii)    An exterior-only appraisal of the Merrillville Property dated as of March 31, 2025, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit 3** (which assigns the Merrillville Property a fair market value of $340,000); and

iii)    Statements made by the Debtors and their counsel between approximately February 20, 2025 and March 12, 2025 concerning the Debtors' purportedly forthcoming list price for the sale of the Virgin Islands Property.

19.    Notwithstanding the above, in their Plan, the Debtors afford Dogwood a secured claim in an amount of just $87,771, with interest accruing thereon at 6% per annum, payable over sixty (60) equal monthly installments in the amount of $1,696.86.  *See* Plan [Dkt. No. 9], § 3.2.

20.    To date—and despite multiple requests from Dogwood for the same—the Debtors have failed to provide *any* evidence supporting their scheduled values of the Collateral or their valuation of Dogwood's Secured Claim used in the Plan.[5]  Moreover, the Debtors recently failed to cooperate with Dogwood's appraiser's request for access to the Merrillville Property for purposes of inspecting the interior of that property in connection with the March 31, 2023 Appraisal.  *See* **Ex. 3**.

---

[5] On or around May 12, 2025, the Debtors' counsel advised the undersigned that the Debtors' $280,000 scheduled value of the Merrillville Property was based upon the Lake County, Indiana Assessor's valuation.  However, the Assessor's value of the Merrillville Property for Assessment Year 2024 was $319,200. *See* https://engage.xsoftinc.com/lake/map/getprintdetail?parcelId=45- 12- 07- 451- 005.000- 030&xmin=- 9727587. 461601593&xmax=- 9727492.213898405&ymin=5085500.408763582&ymax=508559 2.819936423&bm=gray- ve ctor&plat=41.49443548337328&plong=- 87.38397713132353&pscale=282.124294&pzoom=20 (last visited April 14, 2025).  Moreover: (i) according to Zillow, the Merrillville Property is estimated to be worth $414,600 (*see* https://www.zillow.com/homedetails/3738-W-68th-Ave-Merrillville-IN-46410/179709899_zpid. (last visited April 14, 2025)); and (ii) according to Redfin, the Merrillville Property is estimated to be worth $397,098 (*see* https://www.redfin.com/IN/Merrillville/3738-W-68th-Ave-46410/home/131693611 (last visited April 14, 2025)).

21.     The Debtors bear the burden of proof with respect to establishing that their proposed treatment of Dogwood's Secured Claim satisfies the requirements of Bankruptcy Code Section 1325(a)(5)(B)(ii).  *See, e.g., In re Brown*, 244 B.R. 603, 609 (Bankr. W.D. Va. 2000) (concluding that debtor bears burden of proof on the issue of collateral valuation under Bankruptcy Code Section 1325(a)(5)(B)(ii)); *see also In re Roberts*, 210 B.R. 325, 328 (Bankr. N.D. Iowa 1997) ("The Court concludes that the presumption of the prima facie validity of the Bank's claim in Rule 3001(f) applies to this valuation hearing arising in the context of Chapter 13 plan confirmation."); *In re Spraggins*, 316 B.R. 317, 319 (Bankr. E.D. Wis. 2004) ("Under Bankruptcy Rule 3001(f), a creditor's proof of claim constitutes *prima facie* evidence of the validity and amount of the claim.  This presumption places the burden of producing evidence to rebut the claim on the Debtors.  If the Debtors present sufficient evidence to rebut the presumption, the burden then transfers to the creditor to assume the ultimate burden of persuasion on the issue of the value of the collateral securing its claim."); *In re Briseno*, 496 B.R. 509, 515 (Bankr. N.D. Ill. 2013) ("The Debtors, as the parties seeking to strip the liens, bear the burden to establish the values of the properties."); *In re Myers*, No. 07-12354, 2008 WL 1701920, at *1 (Bankr. N.D. Ind. Mar. 14, 2008) ("The debtor bears the burden of proving that its proposed plan satisfies the requirements of the Bankruptcy Code and is worthy of confirmation.").

22.     Since the Debtors' proposed treatment of Dogwood's Secured Claim does not provide for payments to Dogwood that are aligned with the equity in the Collateral available to Dogwood, the Debtors' Plan does not satisfy the requirements of Bankruptcy Code Section 1325(a)(5)(B)(ii) and cannot be confirmed.  *See, e.g., Bell*, 304 B.R. at 882 (denying confirmation where debtor's proposed value of subject property was less than the fair market value thereof).

VP/#70739891

23.     Separately, the Debtors' Plan further violates the requirements of Bankruptcy Code Section 1325(a)(5)(B)(ii) because the Debtors have proposed a "plan interest" rate of just 6% per annum.  That rate is lower than the interest rates required under applicable law and provided for in the Loan Documents (10.25%).  *See* Note (Ex. B to Claim), § 3.

24.     Since "the secured claimant will be receiving payments over time, Section 1325(a)(5)(B)(ii) requires that an interest factor be incorporated into the payments to be made to the secured creditor."  *In re Carson*, 227 B.R. 719, 721 (Bankr. S.D. Ind. 1998).  When "determining an appropriate rate of interest for the payment of secured claims, the court "'begins by looking to the national prime rate.'"  *Myers*, 2008 WL 1701920, at *2 (quoting *Till v. SCS Credit Corp.,* 541 U.S. 465, 478-79 (2004)).

25.     As of the filing of this Objection, the national prime rate is 7.5% per annum.  *See* https://www.federalreserve.gov/releases/h15 (last visited April 15, 2025).[6]  Since the Debtors have not presented any evidence supporting their proposed reduced interest rate, the Debtors' Plan does not satisfy the requirements of Bankruptcy Code Section 1325(a)(5)(B)(ii) and cannot be confirmed.  *See Myers*, 2008 WL 1701920, at *2 (denying confirmation of Chapter 13 plan where debtor proposed interest rate less than then-current prime rate without providing any evidence warranting the requested downward adjustment).

**C.     The Debtors' Plan was not proposed in good faith as required under Bankruptcy Code Section 1325(a)(3).**

26.     Bankruptcy Code Section 1325(a)(3) "requires that a plan be proposed in good faith for the plan to be confirmed."  *In re Hoskins*, 590 B.R. 843, 846 (Bankr. S.D. Ind. 2018) (citing 11 U.S.C. § 1325(a)(3)).  "In considering whether a plan is filed in good faith, the court asks of

---

[6] The Court can take judicial notice of the prime rate displayed on the Federal Reserve Board's website.  *See*, *e.g.*, *In re Williams*, 368 B.R. 744, 753 (Bankr. N.D. Ind. 2007).

8

the debtor:  Is he really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?"  *In re Smith*, 286 F.3d 461, 465 (7th Cir. 2002) (internal citations and quotations omitted).

27.    While there is no specific standard test or definition for the good faith requirement, one factor considered by courts is whether a proposed plan accurately states a debtor's secured and unsecured debts.  *See Hoskins*, 590 B.R. at 846-47.  Inaccuracies in plans may be considered as attempts to mislead the court and evidence of a lack of good faith.  *See Smith*, 286 F.3d at 466.  Similarly, the proposal of an improper "plan interest" rate can support the finding of a lack of good faith.  *See Hoskins*, 590 B.R. at 847-49.

28.    As detailed above, the Debtors have substantially understated the amount of Dogwood's Secured Claim in their Plan, and they have failed to provide any evidence supporting such reduced amount notwithstanding Dogwood's repeated requests for the same.  Similarly, the Debtors propose a "plan interest" rate which is below the typically appropriate rate, but the Debtors have provided no evidence supporting the use of that lower rate.  Moreover, it does not appear that the undersecured portion of Dogwood's Claim is included in the Debtors' calculations of their total unsecured claims.  *See* Plan [Dkt. No. 9], pg. 6.

29.    Additionally, the Debtors seek to reserve the right to object to Dogwood's Secured Claim after confirmation of their Plan.  *See* Plan [Dkt. No. 9], § 8.1.  To the extent such reservation is an attempt by the Debtors to preserve the ability to contest the value of Dogwood's Collateral after confirmation, such reservation runs afoul of the rule that a "secured claim that is filed pre-confirmation without objection (and is therefore 'allowed') and is treated in a subsequently confirmed Chapter 13 Plan cannot later be attacked as to the secured value." *In re Adams*, 270 B.R. 263, 268 (Bankr. N.D. Ill. 2001) (internal citations omitted); *see also In re Nelson*, No. 18

VP/#70739891

BK 16860, 2023 WL 5152688, at *3-*5 (N.D. Ill. Aug. 10, 2023) (concluding that a motion to value a secured claim made after plan confirmation is improper).

30. In light of the above, the Debtors' Plan does not satisfy the good faith requirement of Bankruptcy Code Section 1325(a)(3) and cannot be confirmed.

## RESERVATION OF RIGHTS

31. Dogwood expressly reserves all of its rights in all respects, including, without limitation, its right to supplement this Objection, to further object to any plan proposed by the Debtors (including, without limitation, the Plan) or any other party in this Bankruptcy Case, and to move for additional and further relief, including, without limitation, against any non-debtor individuals and entities.

## CONCLUSION

WHEREFORE, Dogwood State Bank hereby respectfully requests that the Court: (i) sustain this Objection; (ii) deny confirmation of the Debtors' Plan; and (iii) afford Dogwood such other and further relief which the Court deems appropriate and just.

Respectfully submitted,

DOGWOOD STATE BANK

By:/s/ *Michael D. Leifman*
One of Its Attorneys

Michael D. Leifman (IL ARDC No. 6324233)
(*Admitted pro hac vice*)
Vedder Price P.C.
222 North LaSalle Street, Suite 2400
Chicago, Illinois 60601
(312) 609-7500
mleifman@vedderprice.com

10

VP/#70739891

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael D. Leifman, the undersigned attorney, hereby certify that on April 15, 2025, I caused the foregoing **DOGWOOD STATE BANK'S OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN** to be served electronically on all CM/ECF registrants via the Court's electronic notification system, including (without limitation) the following:

Debtors' Attorney: Christopher Schmidgall (bankruptcy@wshlegal.com)

Chapter 13 Trustee: Paul R. Chael (aimee@pchael13.com)

Office of the United States Trustee (USTPRegion10.SO.ECF@usdoj.gov)

Further, I certify that, on April 15, 2025, a true and correct copy of the foregoing **DOGWOOD STATE BANK'S OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN** was sent via U.S. Mail, first class postage prepaid, to the following:

Llewellyn Gerald Reed
Dianne M Canton-Reed
3738 W. 68th Ave.
Merrillville, IN 46410-5865

*/s/ Michael D. Leifman*

11

VP/#70739891